Debtor 1    James H. Tankersley

Debtor 2    Susuan Renee Finley-Tankersley
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of Kentucky

Case number   18-60631-grs

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Citizens Bank<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? _____ |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Coffey & Ford, P.S.C.<br>Name<br><br>P.O. Box 247<br>Number    Street<br><br>Mt. Vernon    KY    40456<br>City    State    ZIP Code<br><br>Contact phone 606-256-4405<br><br>Contact email jford2023@windstream.net | **Where should payments to the creditor be sent? (if different)**<br><br>Citizens Bank, Attn: Dennis Sargent<br>Name<br><br>P.O. Box 1078<br>Number    Street<br><br>Mt. Vernon    KY    40456<br>City    State    ZIP Code<br><br>Contact phone 606-256-2500<br><br>Contact email dsargent@citizensbankrb.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____<br>                                                                 MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  8  9  2  7

**7. How much is the claim?**   $_____ 890,826.05 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned _____

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**  Mortgage _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $____ 835,000.00

Amount of the claim that is secured:  $____ 890,826.05

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $_____ 86,042.25

Annual Interest Rate (when case was filed)__5.50_%

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ **No** | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ **Yes.** *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it.**
**FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/18/2018
          MM / DD / YYYY

/s/John D. Ford
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | John D. Ford | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Coffey & Ford, P.S.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 247 | | |
| | Number     Street | | |
| | Mt. Vernon, KY 40456 | | |
| | City | State | ZIP Code |
| Contact phone | 606-256-4405 | Email | jford2023@windstream.net |

An examination of the records of the creditor Citizens Bank on May 10, 2018 the date of filing of the Bankruptcy Petition of the debtors James Henry Tankersley and Susan Renee Finley-Tankersley reveals the payoff amount due on the following loan is as follows:

1.  The payoff amount due on note number 8927 was $890,826.05 being $827,049.31 in principal, $44,869.61 in interest, $25.00 in late charges and $18,882.13 in pre-petition attorney fees.

2.  The last payment was made on May 4, 2017 and the interest is calculated from said date to the date of the bankruptcy petition filing.

3.  The amount needed to cure any arrearages or defaults would be $86,042.25 (13 payments @ $5,164.24 + $25.00 in late fees + $18,882.13 in pre-petition attorney fees).

4.  There are currently $63,776.74 in pre-petition fees and interest owed (interest, late charge and attorney fees).

Citizens Bank

BY: _Daniel W. Grigsby_

DATE:  _5-16-18_

5/10/2018

Citizens Bank
PO Box 127
Brodhead, KY 40409

Sweet Hollow LLC
424 Sweet Hollow Rd
Corbin, KY 40701

| | |
|---|---|
| Name | Sweet Hollow LLC |
| Borrower # | ~~87291~~ |
| Note # | 48927 |
| Calculation Method | Note Accrual Method |
| Note Type | Reg P & I |
| Estimated Payoff Date | 05/10/2018 |
| Due Date | 05/04/2017 |
| Interest Rate | 5.50 |
| Daily Interest Factor | 124.62 |

THIS STATEMENT REFLECTS THE TOTAL AMOUNT DUE UNDER THE TERMS OF THE NOTE THROUGH THE CLOSING DATE 5/10/18. If this obligation is not paid in full by this date, then you should obtain from us an updated payoff amount before closing.

| | |
|---|---|
| Principal Amount | 827,049.31 |
| Interest Due (plus) | 44,869.61 |
| Unapplied Funds (minus) | 0.00 |
| | |
| Escrow Balance (minus) | 0.00 |
| Auxiliary Escrow Balance (minus) | 0.00 |
| Escrow Interest (minus) | 0.00 |
| Escrow Interest Withholding (plus) | 0.00 |
| Unpaid Late Charge (plus) | 25.00 |
| Calculated Late Charge (plus) | 0.00 |
| Prepayment Penalty (plus) | 0.00 |
| Misc Insurance (minus) | 0.00 |
| Misc Fees (plus) | 0.00 |
| Subtotal | 871.943.92 |
| | |
| Rebates | 0.00 |
| | |
| Total | 871,973.92 |
| | |
| Pre-petition Attorney Fees | 18,882.13 |
| | |
| Total Payoff as of 05/10/2018 | 890,826.05 |

COPY

| SWEET HOLLOW, L.L.C.<br>424 SWEET HOLLOW ROAD<br>CORBIN, KY 40701 | CITIZENS BANK -- MOUNT VERNON ROCKCAST...<br>COUNTY, KY<br>PO BOX 1078<br>MT.VERNON, KY 40456 | BORR # ▓▓▓▓<br>Loan Number ▓▓▓927<br>Date 03-04-2010<br>Maturity Date 03-04-2040<br>Loan Amount $ 908,977.86<br>Renewal Of<br>SSN/TIN ▓▓▓▓▓▓▓ |
|---|---|---|
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **▓▓▓▓▓'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of **NINE HUNDRED EIGHT THOUSAND NINE HUNDRED SEVENTY SEVEN AND 86/100** Dollars $ **908,977.86**

☒ **Single Advance:** I will receive all of this principal sum on _____ **03-04-2010** _____ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ **03-04-2010** _____ at the rate of _____ **5.500** % per year until **03-04-2015**

☒ **Variable Rate:** This rate may then change as stated below.
  ☒ **Index Rate:** The future rate will be **EQUAL TO** the following index rate: **THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 70% OF THE 10 LARGEST U.S. BANKS KNOWN AS THE WALL STREET JOURNAL U.S. PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED UP TO THE NEAREST 0.125**
  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☒ **Frequency and Timing:** The rate on this note may change as often as **EVERY YEAR BEGINNING 03-04-2016** .
     A change in the interest rate will take effect **ON THE FOLLOWING DAY** .
  ☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ **N/A** % or less than _____ **5.500** %. The rate may not change more than _____ % each _____
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☒ The amount of each scheduled payment will change. ☐ The amount of the final payment will change.
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ **ACTUAL/365** _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than _____ **10** _____ days after it is due, I agree to pay a late charge of **10.000% OF THE LATE AMOUNT WITH A MIN OF $10.00 AND A MAX OF $25.00** .

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
359 MONTHLY PAYMENTS OF $5,184.02 BEGINNING 04-04-2010 AND 1 PAYMENT OF $5,183.29 ON 03-04-2040. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE AFTER THE 60TH PAYMENT AND EVERY 12TH PAYMENT THEREAFTER.

**ADDITIONAL TERMS:**
THIS LOAN IS SUBJECT TO KRS 360. THIS LOAN IS SECURED BY REM DATED 03/04/2010 ON PROPERTY AT 424 SWEET HOLLOW ROAD, CORBIN, KY 40701 A.K.A SWEET HOLLOW RESORT AND GOLF COURSE & A PERSONAL GUARANTY IN THE NAME OF SUSAN R. FINLEY-TANKERSLEY & JAMES TANKERSLEY FOR $908,977.86 EACH. RELEASE FEES FOR AREAS "A" THRU "F", AS ESTABLISHED IN AGREED ORDER OF SETTLEMENT DATED 2/3/10, WILL BE 75% OF THE GROSS SALES PRICE OR $8,000 PER ACRE WHICHEVER IS GREATER. AREA "G" WILL BE RELEASED WITH NO CONSIDERATION ONCE THIS NOTE IS EXECUTED. AREA "H" RELEASE FEE WILL BE 75% OF THE GROSS SALES PRICE OR $8,000 PER ACRE WHICHEVER IS GREATER. THE REMAINING 113 ACRES +/- OR ANY PORTION THEREOF AS ESTABLISHED IN THE AGREED ORDER OF SETTLEMENT DATED 2/3/10 SHALL NOT BE RELEASED UNTIL THIS NOTE IS PAID IN FULL, UNLESS THE ENTIRETY OF THE CONSIDERATION IS USED TO PAY THE PRINCIPAL INDEBTEDNESS & IS APPROVED BY CITIZENS BANK. SEE AGREED ORDER OF SETTLEMENT DATED 2/3/10 FOR FURTHER DETAILS.

| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>REAL ESTATE MORTGAGE AND PERSONAL GUARANTY AGREEMENT (X2) DATED 03/04/2010<br><br>*(This section is for your internal use only. Failure to list a separate security document does not mean the agreement will not secure this note.)* | **PURPOSE:** The purpose of this loan is **CONSOLIDATE CR COMM.**<br>▓▓▓▓▓7271 & ▓▓▓▓▓7966 PER AGREED ORDER OF SETTLEMENT<br>**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.<br>SWEET HOLLOW, L.L.C. |
|---|---|
| **Signature for Lender**<br><br>*Dennis Sargent*<br>**DENNIS SARGENT, SENIOR LOAN OFFICER** | *Susan R. Finley-Tankersley*<br>**SUSAN R. FINLEY-TANKERSLEY, MEMBER**<br><br>_____ |

**UNIVERSAL NOTE**
Express © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 3/4/2002 (page 1 of 2)

EXHIBIT

**DEFINITIONS:** As used on page 1, "I" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and in an error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
  "Right to receive money from you" means:
  (1) any deposit account balance I have with you;
  (2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
  (3) any repurchase agreement or other nondeposit obligation.
  "Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
  (1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
  (2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
  (3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
  (4) You may refuse to make advances to me or allow purchases on credit by me.
  (5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
  (1) demand payment of amounts due (presentment);
  (2) obtain official certification of nonpayment (protest); or
  (3) give notice that amounts due have not been paid (notice of dishonor).
  I waive any defense I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on the note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to the agreement without releasing any other party. If you give up any of your rights, with or without reason, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experti © 1994, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 5/4/2002

S.R.D.T.

—————— Commonwealth of Kentucky ——————— Space Above This Line For Recording Data ———————

# REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage is <u>03-04-2010</u> _____ and the parties and their addresses are as follows:

    MORTGAGOR: SWEET HOLLOW, L.L.C., LIMITED LIABILITY
    COMPANY
    424 SWEET HOLLOW ROAD
    CORBIN, KY 40701

    ☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors, signatures and acknowledgements.

    LENDER: CITIZENS BANK -- MOUNT VERNON ROCKCASTLE COUNTY, KY
    ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF KENTUCKY
    PO BOX 1078 MT VERNON, KY 40456
    ROCKCASTLE COUNTY

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following described property: SEE EXHIBIT A

    The property is located in <u>LAUREL/KNOX</u> _____ at <u>424 SWEET HOLLOW ROAD</u> _____
    (County)

    _____ , <u>CORBIN</u> _____ , Kentucky <u>40701</u> _____
    (Address)                      (City)                            (Zip Code)

    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed $ <u>908,977.86</u> _____ . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage. Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

KENTUCKY - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES) (page 1 of 8)

Exⁱᵉ ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-KY 5/11/2004 _____  _____  _____  SR FY



4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(your description must include date and maturity date)*: LOAN IN THE NAME OF SWEET HOLLOW, LLC DATED 03/04/2010 FOR THE AMOUNT OF $808,977.86 MATURING ON 03/04/2040.

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt.
   C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.
   If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission.
5. **PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.
6. **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.
7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.
8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.
9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.
10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.
11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its

Exçered © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-KY 6/11/2004

business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.

B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.

C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately

Express © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-KY 5/11/2004 _____ _____ _____ SRFT·

effective between Mortgagor and Lender. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. Unless otherwise prohibited or prescribed by state law, Mortgagor agrees that Lender may take actual possession of the Property without the necessity of commencing any legal action or proceeding. Mortgagor agrees that actual possession of the Property is deemed to occur when Lender notifies Mortgagor of Mortgagor's default and demands that Mortgagor and Mortgagor's tenants pay all Rents due or to become due directly to Lender. Immediately after Lender gives Mortgagor the notice of default, Mortgagor agrees that either Lender or Mortgagor may immediately notify the tenants and demand that all future Rents be paid directly to Lender.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Mortgagor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for enforcement actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and enforce this Mortgage in a manner provided by law if this Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after enforcement proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **REDEMPTION.** If the Property sold does not bring two-thirds of its appraised value, the period of redemption after sale on enforcement shall be one year from the day of sale. Any agreement to extend the redemption period must be in writing.

19. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other

ExpereX © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-KY 5/11/2004

examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees as provided by law, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

20. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:

A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.

L. Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any enforcement or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

21. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any

Experts® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-KY 8/11/2004

proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

22. **INSURANCE.** Mortgagor agrees to maintain insurance as follows:

A. Mortgagor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

23. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

24. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

25. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender.

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guarantied, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

ExΩereS® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-KY 6/11/2004

*S.R.F.T.*

**26. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

**27. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**28. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all right to marshalling of liens and assets and homestead exemption rights relating to the Property.

**29. OTHER TERMS.** If checked, the following are applicable to this Mortgage:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.

☐ **Construction Loan.** This Mortgage secures an obligation incurred for the purpose of erecting, improving, or adding to a building on the Property.

☐ **Agricultural Property.** Mortgagor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Mortgagor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____ .

Entity Name: SWEET HOLLOW, L.L.C.

_Susan R. Finley - Tankersley_    3/4/2010
(Signature) SUSAN R. FINELY-TANKERSLEY, MEMBER    (Date)    (Signature)    (Date)

(Signature)    (Date)    (Signature)    (Date)

Expere® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-KY 5/11/2004    (page 7 of 8)

**ACKNOWLEDGMENT:**

_(Individual)_

COMMONWEALTH OF _____, COUNTY OF _____ } ss.

This instrument was acknowledged before me this _____ day of _____

by _____ .

I certify (1) that the person acknowledging appeared before me and acknowledged that he or she executed the instrument, and (2) that I knew the person acknowledging or had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

My commission expires:

_____
(Notary Public)

_(Business or Entity Acknowledgment)_

COMMONWEALTH OF <u>KENTUCKY</u> _____, COUNTY OF <u>Rockcastle</u> } ss.

This instrument was acknowledged before me this <u>4TH</u> day of <u>MARCH, 2010</u>

by <u>SUSAN R. FINELY-TANKERSLEY, MEMBER</u> _____ (Title(s))

of <u>SWEET HOLLOW, L.L.C.</u> _____ (Name of Business Entity)

a <u>KENTUCKY LIMTED LIABILITY CORPORATION</u> _____ on behalf of the business or entity.

I certify (1) that the person acknowledging appeared before me and acknowledged that he or she executed the instrument, and (2) that I knew the person acknowledging or had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

My commission expires: 8-15-11

_Shara Baldwin_
(Notary Public)

This instrument was prepared by (name and address) <u>COFFEY AND FORD, P.S.C. 45 EAST MAIN STREET   MOUNT VERNON, KY 40456</u>

_____
(Signature of Preparer)

## SWEET HOLLOW, LLC

Lying and being in Laurel County, Kentucky and more particularly described as:

Parcel One: Tract No. 1: Beginning at two beeches and white oak, on the south bank of Horse Creek, Joseph Teague's corner; thence with his line S. 24 E. 46 poles to a hickory; thence up the point with old road S. 50 E. 12 2/5 poles to a white oak; thence S. 81 E. 16 poles to a post oak on side of road; thence S. 58 E. 3 ½ poles to a stone on North side of road; thence N. 17 E. 70 poles to a stone in a bottom; thence N. 36 W. 12 poles to a stake; thence N. 75 W. 29 ½ poles to a small sweet gum and dogwood at a fence; thence S. 32 W. 41 ½ poles to a stake on south side bank of Horse Creek; thence with the creek N. 63 ½ W. 9 2/5 poles to the beginning and contain 21 acres more or less.

Tract No. 2: Beginning at a stone in the Joseph Hammons and Abel Lanham's line; thence N. 23 E. 39 poles to a stone; thence N. 28 E. 21 poles to a stone; thence northeast down a small branch 60 poles to a stone; thence N. 39 E. 46 poles to a stone; thence northeastwardly 60 poles to a stone; thence N. 86 E. 38 ¼ poles to a stone; thence S. 56 E. 48 ¾ poles to a stone; thence N. 66 E. 29 poles to a stone in Spurlock's line; thence southwardly with Spurlock line to two red oaks; thence northwestwardly with said Spurlock's line to the Joseph Hammons line; thence southwardly with said Hammons line to Horse Creek; thence down said creek to the mouth of Darkey Branch; thence up said branch to a stone, Hammons corner; thence southwestwardly with said Hammons line to a stone; thence S.W. with said Hammons line to a black gum a corner to Joseph Hammons and Abel Lanham; thence westwardly with said line to the beginning, containing forty acres more or less.

Tract No. 3: A certain tract of land containing forty acres more or less, lying and being in Laurel County, Kentucky, on the waters of Horse Creek and bounded as follows: Beginning on the mouth of the branch that Steve Teague now lives on; thence up said branch to said Morgan's maple corner; thence the old line to top of the ridge to a spotted oak corner of Morgan; thence northward with the line road to where wagon road leaves the line road to go to where Joseph Teague now lives; thence with the ridge road to the corner of said Morgan field next to said Teague's to two small hickories growing from same root; thence a northward course to the bank of Horse Creek to two small beeches and small white oak, marked by Morgan and Teague; thence down said Horse Creek to the beginning.

It is specifically understood by and between the parties hereto that a portion of said tracts have not been surveyed, and is described by boundary only and that this conveyance to second parties is made by boundary only.

S.R.F.T.

Exhibit A
Pg 1

There is excepted from the foregoing described tracts of land the following described tract containing 6 acres, which is specifically retained by first party (Virgil Hodge) and described as follows: Beginning at a maple and gum on west side of county road on bank of branch; thence S. 49 deg. W. 48 poles to a stake; thence N. 40 deg. W 17 poles to a fence, stake at branch; thence N. 20 deg. E. 7 poles to a stone at branch; thence N. 52 deg. E. 25 poles to cross tie post; thence N. 35 deg. E. 16 poles to post and rock; thence N. 43 deg. E. 7 poles to road; thence S. 55 E. with road 57 poles to the beginning, containing 6 acres more or less.

ALSO there is excepted from the above described property approximately 1.8 miles which is all of that property located on the west side of Sweet Road, which property joins that property retained by Virgil Hodge in the above described deed.

ALSO less and except that property of record in Plat Book 1-A, Page 85, records of the Laurel County Court Clerk's Office.

ALSO less and except the following:

Deed Book 452, Page 52, Lot 63, Phase II-(incorrect source given);
Deed Book 453, Page 42, Lot 65, Phase II-(incorrect source given);
Deed Book 452, Page 196, Lot 71, Phase II-(incorrect source given);
Deed Book 471, Page 431, Pat of Lot 80, Phase II-(incorrect source given);
Deed Book 418, page 412, Lot 31;
Deed Book 425, page 175, Lot 46;
Deed Book 427, page 128, Lots 15 & 16;
Deed Book 428, page 619, Lot 29;
Deed Book 449, page 001, Lot 36;
Deed Book 449, page 226, Lots 54 & 55;
Deed Book 449, page 356, Lots 11 & 12;
Deed Book 449, page 626, Lots 13 & 14;
Deed Book 449, page 722, Lot 56;
Deed Book 450, page 104, Lots 20, 21, 22, 23, 49 & 50;
Deed Book 450, page 640, Lots 4, 5, 9, 10, 17, 18, 19, 28, 32 & 33;
Deed Book 451, page 065, Lot 37;
Deed Book 451, page 483, Lots 26 & 27;
Deed Book 452, page 214, Lot 48;
Deed Book 454, page 599, Lots 1, 2 & 30;
Deed Book 462, page 484, Lot 40 and part of 41;
Deed Book 345, page 573, Lot 38;
Deed Book 347, page 031, Lots 52 & 53;
Deed Book 352, page 457, Lot 44;
Deed Book 354, page 414, Lot 25;

SRFT.
Exhibit A
Pg. 2

Deed Book 363, page 544, Lot 03;
Deed Book 366, page 407, Lot 51;
Deed Book 367, page 171, Lots 7 & 8;
Deed Book 372, page 286, Lots 42, 43 and part of 41;
Deed Book 375, page 532, Lot 24;
Deed Book 387, page 377, Lot 34;
Deed Book 390, page 092, Lot 06;
Deed Book 393, page 464, Lot 45;
Deed Book 394, page 455, Lot 47;
Deed Book 649, page 590, Lot 35 (.60 acres);

Transmission Line easement of record in Deed Book 299, page 169 to East Kentucky Power Cooperative, Inc.

Utility easement of record in Easement Book 3, page 93 to Kentucky Utilities Company.

Easement of right of way of record in Easement Book 4, page 53 to Halco Energy, Inc.

PARCEL TWO: Beginning on a tree located on the east side of old road; thence S. 56 deg. 00' E. 166.00 feet to a tree; thence S. 59 deg. 00' E. 167.52 feet to a point; thence S. 48 deg. 30' E. 105.60 feet to a point; thence N. 81 deg. 00' E. 94.88 feet to a point; thence S. 38 deg. 00' E. 299.00 feet to a point; thence S. 55 deg. 00' E. 117.50 feet to a point; thence S. 12 deg. 15' W. 135.30 feet to a point; thence S. 20 deg. 25' W. 173.52 feet to a point; thence S. 22 deg. 10' W. 231.00 feet to a set stone; thence S. 24 deg. 20' W. 550.00 feet to iron pin set; thence S. 22 deg. 55' W. 312.70 feet to a point; thence S. 31 deg. 53' W. 355.56 feet to a point; thence S. 18 deg. 40' W. 198.59 feet to a point; thence S. 09 deg. 55' W. 619.69 feet to a fence post; thence S. 17 deg. 08'W. 204.00 feet to a point; thence S. 20 deg. 18' W. 89.06 feet to a point in the center of old county road; thence with road in a northwesterly direction the following calls: N. 27 deg. 16' W. 89.89 feet to a point; N 94 deg. 46' W. 171.26 feet to a point; N. 40 deg. 07' W. 174.52 feet to a point; N. 50 deg. 01' W. 201.00 feet to a point; N. 44 deg. 06' W. 220.79 feet to a point; N. 15 deg. 49' W. 242.00 feet to a point; N. 54 deg. 44' W. 74.87 feet to a point out the North side of Old County Road; thence leaving road N. 23 deg. 17; E. 585.09 feet to a tree; thence N. 18 deg. 10' E. 964.78 feet to a tree; thence N. 68 deg. 53' W. 493.28 feet to a tree; thence N. 65 deg. 34' W. 233.96 feet to a point; thence N. 74 deg. 06' W. 112.06 feet to a tree; thence N. 18 deg. 10' E. 95.62 feet to a point; thence N. 34 deg. 30' E. 95.23 feet to a point; thence N. 84 deg. 44' E. 33.00 feet to a point; thence N. 88 deg. 40' E. 99.00 feet to a point; thence N. 74 deg. 40' E. 267.50 feet to a fence post located at Old County Road in the Laurel and Knox County line; thence with road and the Laurel

S RFT
Exhibit A
Pg 3

and Knox County line the following calls: S. 88 deg. 15' E. 440.00 feet to a point; N. 43 deg. 45' E. 170.00 feet to a point; N. 34 deg. 20' E. 245.00 feet to the place of beginning. As surveyed by Ted P. Hensley, Registered Land Surveyor, L.S. 1616.

There is excepted and not conveyed herein approximately 7 acres which beginning point is the electric power right of way and ending at the blacktop road known as Oak Ridge Road.

ALSO-less and except the following:

Deed Book 467, Page 550, Lot 77, Phase II
Deed Book 470, Page 219, Lot 79, Phase II

PARCEL THREE: Beginning at a small sourwood, located on the south side of Horse Creek; thence with the property line fence; thence S. 21 deg. 22' W. 645.45 feet to a post oak; thence continuing with the fence, S. 54 deg. 50' E. 68.25 feet to a red oak; thence S. 34 deg. 26' E. 66.94 feet to a white oak; thence S. 12 deg. 18' E. 66.94 feet to a white oak; thence S. 02 deg. 43' W. 76.71 feet to a black oak; thence N. 70 deg. 34' E. 128.30 feet to an iron rebar; thence S. 82 deg. 48' E. 138.06 feet to a poplar; thence S. 82 deg. 32' E. 121.93 feet to an iron rebar; thence N. 00 deg. 18' W. 148.05 feet to a pine; thence N. 02 deg. 52' W. 173.25 feet to a poplar; thence N. 12 deg. 49' W. 97.87 feet to a pine; thence N. 19 deg. 09' W. 185.53 feet to a pine; thence N. 27 deg. 39' W. 196.42 feet to a dogwood; thence N. 36 deg. 29' W. 122.01 feet to the point of beginning, containing 6.08 acres more or less, as surveyed by Charles Felts, Registered Land Surveyor.

PARCEL FOUR: Beginning at a W. Oak stump in fence corner common to Taylor & Finley; thence with fence N. 70.25 W. 273.2' to a stake in fence; thence with fence N. 69.24 W. 220.6' to a stake in fence; thence with fence N. 68.54 W. 184' to a stake in fence; thence with fence N. 72.05 W. 144.3' to a stake in fence; thence with fence N. 69.23 W. 231.6' to a 10" white oak in fence; thence with fence N. 68.32 W. 280.6' to a fence post corner common to Taylor & Finely; thence with fence S. 22. 53 W. 327.8' to a stake in fence; thence with fence S. 22.08' W. 186.8' crossing a creek to a 12" hickory on the creek bank; thence with fence S. 34.29 E. 124' to a clump of 4" dogwoods in fence; thence with fence S. 26.22 E. 200.2' to a 12" pine in fence; thence with fence S. 16.10' E. 183' to a 14" pine in fence; thence with fence S. 10.52 E. 96.2' to a 20" popular in fence; thence with fence S. 2.10 E. 176.1' to a 12" pine in fence; thence with fence S. 2.20 W. 87' to a 10" hickory in fence; thence with fence S. 1.53 W. 65.1' to an iron pin in fence corner common to Taylor, Finley & Moore Heirs; thence with the fence N. 88.06 E. 69' to a fence post corner common to Moore Heirs and Taylor; thence with fence a line common to Moore Heirs & Taylor N. 39.09 E. 107.9' to a fence

SRFT
Exhibit A
Pg 4

post; thence N. 41.05 E. 358.2' to a 2" oak in fence; thence with fence N. 42.05 E. 283.7' to a fence post corner common to Moore Heirs & Taylor; thence with fence S. 35.50 E. 280' to a stake in fence; thence S. 34.50 E. 168' to a fence post at the RW line of Old County Road; thence with RW of Old County Road N. 55.10 E. 230.8" to a stake in RW; thence with RW N. 48.19 E. 268' to a stake in RW; thence with RW 44.50 E. 200' to a stake in RW; thence with RW N. 35.20 E. 86' to a stake in RW; thence N. 17.19 E. 103' to a stake near 30" oak in RW line of Old County Road; thence leaving RW N. 77.45 W. 190' to the beginning corner, containing 25.54 acres more or less.

Tract No. 2: Beginning at a 36" red oak near RW of Old County Road; thence N. 77.45 W. 6' to a stake in RW line of Old County Road; thence with RW of Road S. 17.19 W. 105' to a stake in RW; thence with RW S. 35.20 W. 88' to a stake; thence with RW S. 44.59 W. 200' to a stake on RW; thence with RW S. 48.19 W. 268' to a stake in RW; thence with RW S. 55.10 W. 230.8' to a fence post in RW; thence leaving RW S. 41.15 E. 171.9' to a steel post in center of drain; thence S. 47.10 E. 543.4; crossing dam of pond to a steel post; thence S. 59.33 E. 428.6' to a steel post; thence S. 83.24 E. 341' to a steel post; thence N. 42.53 W. 887.8' to the beginning corner containing 6.62 acres more or less.

Less and except the following:

Deed Book 444, Page 531, Lot 70, Phase II
Deed Book 430, page 482, Lot 66, Phase II
Deed Book 429, Page 135, Lot 69, Phase II

PARCEL FIVE: Beginning on a tree located on the North side of an old county road in the Laurel and Knox County line; thence with the road and the Laurel and Knox County line the following calls: S. 34 deg. 20' W. 245.00 feet to a point; S. 43 deg. 45' W. 170.00 feet to a point; N. 88 deg. 15' W. 440.00 feet to a fence post located on the North side of the old county road in the Laurel and Knox County line; thence leaving road N. 29 deg. 43' E. 599.00 feet to a point; thence N. 31 deg. 48' E. 128.00 feet to a point; thence S. 48 deg. 09' E. 481.26 feet to the place of beginning, containing 7.07 acres more or less.

Less and except:

Deed Book 411, page 550, .766 acre

PARCEL SIX: LYING AND BEING IN KNOX COUNTY, KENTUCKY and described as follows:

SRFT
Exhibit A
Pg. 5

A certain tract of land lying and being in Knox County, Kentucky, on the waters of Horse Creek and beginning at a spotted oak and stone in the fence line between this property and the property of Chester Helton; thence running with said wire fence in a western direction to a double hickory in the hollow, being a corner between Chester Helton and Tom Hampton; thence continuing in a western course with said Hampton's wire fence to six dogwoods and a stone, being a corner common to this land and land owned by Tom Hampton and McFarland; thence running in a southward direction with a little hollow to six small poplars and a stone; thence in an eastern direction to a black oak and stone, at Goodlow Howard's corner in Bill Jones' line; thence in a northern direction to a double maple, George Blanton's corner; thence in an eastern direction with said Blanton's line to a stone at or near a pond and the County road; thence running in a northern direction with the meanders of the said county road 70 yards to a maple bush in Helton's line; thence a western course with said Chester Helton's to the beginning; containing 30 acres, more or less.

Less and except:

Misc. Book 18, page 602, (Laurel Co. Clerk) and Deed Book 273, page 631 (Knox Co. Clerk)-04.499 acres;

Transmission Line easement of record in Deed Book 193, page 32 to East Kentucky Power Cooperative, Inc.

THERE IS FUTHER EXCEPTED FROM THE ABOVE PARCELS THE FOLLOWING:

Deed Book 497, page 701-.50 acre;
Deed Book 484, page 109-1.50 acre;
Deed Book 475, page 59, Lot 76, Phase II;
Deed Book 476, page 139, Lot 68, Phase II;
Deed Book 563, page 544, Lot 58, Phase II;
Deed Book 572, page 677, Lot 60, Phase II;
Deed Book 579, page 644, Lot 61, Phase II;
Deed Book 581, page 437, Lot 59, Phase II;
Deed Book 583, page 424, Lot 78, Phase II;
Deed Book 586, page 062, Lot 57, Phase II;
Deed Book 425, page 175, Lot 43;
Deed Book 597, page 301, Lot 74, Phase II;
Deed Book 597, page 305, Lot 75, Phase II;
Deed Book 608, page 244, Lot 62, Phase II;
Deed Book 597, page 309, Lot 64, Phase II;

S RFT
Exhibit A
Pg 6

Deed Book 617, page 206, Tract 2 (.64 acres);
Deed Book 617, page 211, Tract 1 (.82 acres);
Deed Book 641, page 250, Lot 67, Phase II;
Deed Book 645, page 421, Lot 2 (.694 acres);
Deed Book 645, page 421, Lot 3 (.73 acres);
Deed Book 648, page 481, Lot 3 (.51 acres);

Sweet Hollow, LLC, a Georgia Limited Liability Company, obtained title to the above described real property by deed dated September 24, 1997, executed by Sweet Hollow, Inc., and recorded in Deed Book 474, page 393 in the Office of the Laurel County Clerk.

State of Kentucky, County of Laurel, Sct. I, DEAN JOHNSON, Clerk of the Laurel County Court, do certify that the foregoing _Mortgage_ was, on the _15_ day of _Mar_ 20_10_ at _10:23_ A.M., lodged in my office for record, and that it has been duly recorded in my said office, together with this and the certificate thereon endorsed. Given under my hand this _15_ day of _Mar_ 20_10_ in Book _948_ Page _501_ Clerk _____ D.C.

DOCUMENT NO: 148194
RECORDED ON: MARCH 19, 2010 11:29:14AM
TOTAL FEES: $33.00
COUNTY CLERK: MIKE COREY
COUNTY: KNOX COUNTY CLERK
DEPUTY CLERK: KIM MILLS
BOOK M368 PAGES 396 - 410

$ Q F T
Exhibit A
Pg. 7

# GUARANTY

**MT VERNON**       **KENTUCKY**
(City)      (State)

**MARCH 04, 2010**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce **CITIZENS BANK – MOUNT VERNON  ROCKCASTLE COUNTY, KY** (herein, with its participants, successors and assigns, called "Lender", at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of **SWEET HOLLOW, L.L.C.**

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

     A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following:  **LOAN IN THE NAME OF SWEET HOLLOW, LLC DATED 03/04/2010 FOR $908,977.88 MATURING ON 03/04/2040** and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

     B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The maximum aggregate liability that I am subject to is **$ 908,977.88** _____ .
In addition to the maximum aggregate liability stated, I absolutely and unconditionally guarantee payment of interest accruing on the guaranteed indebtedness, and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the indebtedness and securing the payment of the indebtedness, including reasonable attorneys' fees.
This guaranty will terminate on **03-04-2040** _____ . The termination will not affect my liability with respect to obligations created or incurred prior to the termination date, or extensions or renewals of, interest accruing on, or fees, costs, or expenses incurred with respect to such obligations on or after the termination date.

The Undersigned further acknowledges and agrees with Lender that:

     1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

     2. This is an absolute, unconditional and continuing guaranty of payment of the indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

     3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

     4. Indebtedness may be created and continued in any amount, whether or not in excess of any principal or aggregate amount stated above, without affecting or impairing the liability of the Undersigned as limited hereunder. The Lender may apply any sums received by or available to Lender on account of this indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____
**This guaranty includes the additional provisions on page 2, all of which are made a part hereof.**

     IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

*Susan R. Finley - Tankersley*
**SUSAN R. FINLEY-TANKERSLEY**

_____

_____

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

© Bankers Systems, Inc., St. Cloud, MN 56301  Form M-240-KY  11/2/2005  (For Corporate Guarantor use M-260-KY)      *(page 1 of 3)*



## ADDITIONAL PROVISIONS

**5.** Subject to any limitations stated in this guaranty, the Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

**6.** Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned); (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

**7.** The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

**8.** The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

**9.** If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

**10.** Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or perfor- mance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

**11.** The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

**12.** The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

**13.** This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

*(page 2 of 2)*

Experts ©Bankers Systems, Inc., St. Cloud, MN 563°   ™ BG-260-EY 9/2/2005 (For Corporate Guarantor use M-260-E*   S.C.F.

# GUARANTY

MARCH 04, 2010

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce CITIZENS BANK -- MOUNT VERNON ROCKCASTLE COUNTY, KY

(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of SWEET HOLLOW, L.L.C.

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: **LOAN IN THE NAME OF SWEET HOLLOW, LLC DATED 03/04/2010 FOR $608,977.86 MATURING ON 03/04/2040** _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____ .

The maximum aggregate liability that I am subject to is $ 608,977.86 _____ .
In addition to the maximum aggregate liability stated, I absolutely and unconditionally guarantee payment of interest accruing on the guaranteed Indebtedness, and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, including reasonable attorneys' fees.
This guaranty will terminate on 03-04-2040 _____ . The termination will not affect my liability with respect to obligations created or incurred prior to the termination date, or extensions or renewals of, interest accruing on, or fees, costs, or expenses incurred with respect to such obligations on or after the termination date.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all Indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. Indebtedness may be created and continued in any amount, whether or not in excess of any principal or aggregate amount stated above, without affecting or impairing the liability of the Undersigned as limited hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____ .
**This guaranty includes the additional provisions on page 2, all of which are made a part hereof.**

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

JAMES TARKERSLEY

"Undersigned" shall refer to all persons who sign the guaranty, severally and jointly.

Exp̱eṟṯy̱ ©Bankers Systems, Inc., St. Cloud, MN 56301  Form M-340-KY  8/2/2005  (For Corporate Guaranty) use M-290-KY)



## ADDITIONAL PROVISIONS

5. Subject to any limitations stated in this guaranty, the Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness; (ii) any one or more extensions or renewals of indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any indebtedness; (v) any discharge of any evidence of indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon indebtedness; (x) any election by the Lender under § 1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay indebtedness even though any other person obligated to pay indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such indebtedness as fully as if such application had never been made.

10. Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay indebtedness arising out of the creation or perfor- mance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing indebtedness. Lender shall not be required first to resort for payment of the indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this and the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

ExpertT © Bankers Systems, Inc., St. Cloud, MN 563* ■ 10-360-2Y 1/1/2006 G'or Corporate Guaranty/ess M-260-2Y

ENTERED

JAN 2 6 2018

LAUREL CIRCUIT DISTRICT COURT
ROGER L. SCHOTT, CLERK

COMMONWEALTH OF KENTUCKY
27TH JUDICIAL CIRCUIT
LAUREL CIRCUIT COURT
CIVIL ACTION NO. 17-CI-00778
DIVISION II

CITIZENS BANK                                    PLAINTIFF

V.

SWEET HOLLOW, LLC
A/K/A SWEET HOLLOW RESORT

SUSAN R. FINNELY-TANKERSLEY

JAMES H. TANKERSLEY

COMMONWEALTH OF KENTUCKY
DEPARTMENT OF REVENUE
DIVISION OF COLLECTIONS

BEN HAMILTON AND
JESSICA HAMILTON                                 DEFENDANTS

---

FINDINGS OF FACT, CONCLUSIONS OF LAW
& JUDGMENT

---

This matter having come before the Court on the motion of the

plaintiff for a summary judgment against the defendants Sweet Hollow,

LLC, James H. Tankersley and Susan R. Finnely-Tankersley, an in rem

default judgment against the Commonwealth of Kentucky, Department of

Revenue, Division of Collections consistent with the relief sought in the

complaint. Further the plaintiff requests that Ben Hamilton and Jessica Hamilton be dismissed from this action. The Court being sufficiently advised, DOES NOW AND HEREBY make the following Findings of Fact, Conclusions of Law, Judgment and Order of Sale.

## **FINDINGS OF FACT**

The Court makes the following Findings of Fact:

1.    The defendants Sweet Hollow, LLC and Susan R. Finley Takersley were served with personal service on October 2, 2017 and James Tankersley was served with personal service on September 15, 2017. These defendants filed an answer to the complaint on October 2, 2017.

2.    The defendants Ben Hamilton and Jessica Hamilton were served with personal service on October 5, 2017. These defendants filed an answer to the complaint on October 9, 2017.

3.    The defendant Commonwealth of Kentucky, Department of Revenue, Division of Collections was served with personal service on October 4, 2017. No answer or other responsive pleading has been filed by this defendant.

4.    The time for filing and Answer or other responsive pleading as required by the Kentucky Rules of Civil Procedure has now expired and the

defendant Commonwealth of Kentucky, Department of Revenue, Division of Collections is now in default.

5.    The attorney for the plaintiff has certified that no answer or any other responsive pleading has been served by the defendants Anthony King, His Unknown Spouse or Kentucky Farm Bureau Insurance Company on the attorney for the plaintiff in this action

6.    Pursuant to the Kentucky Rules of Civil Procedure the plaintiff is now entitled to an in rem judgment against the defendant Commonwealth of Kentucky, Department of Revenue, Division of Collections in accordance with the relief requested in the complaint.

7.    The defendants Ben Hamilton and Jessica Hamilton filed an answer where they stated they make no claim or have any lien on the subject real property and requested to be dismissed from this action. These defendants should be dismissed from this action.

8.    The plaintiff is entitled to a summary judgment against the defendants Sweet Hollow, LLC, Susan R. Finely Tankersley and James H. Tankersely consistent with the relief sough in the complaint.

Summary Judgment per Civil Rule 56.03 is designed to expedite the disposition of cases and to avoid unnecessary trials when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of

law. <u>Steelvest Inc. v. Scansteel Serv. Center Inc.</u>, 807 S.W. 2d 476, 480 (Ky. 1991). It is well settled that a summary judgment may be rendered solely on the basis of affidavits or upon affidavits or other evidentiary materials. <u>Smith v. Hillard</u>, 408 S.W.2d 440, 442 (Ky. App. 1966). See also <u>Hill v. Fiscal Court of Warren County</u>, 429 S.W.2d 419, 420 (Ky. App. 1968) and <u>CR</u> 56.03. A party opposing a properly supported summary judgment motion cannot defeat the motion without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial. <u>Steelvest, Inc.</u> at 482. See also <u>Gullett v. McCormick</u>, Ky., 421 S.W.2d 352 (1967); <u>Continental Casualty Company v. Belknap Hardware & Manufacturing Co.</u>, Ky., 281 S.W.2d 914 (1955). The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a properly supported motion for summary judgment. <u>Wymer v. J.H. Properties, Inc.</u>, 50 S.W.3d 195, 199 (2001). Speculation and supposition are insufficient to prevent a summary judgment. <u>O'Bryan v. Cave</u>, 202 S.W.3d 585, 588 (Ky. 2006) and <u>Chesapeake & Ohio Ry. Co.</u>, 239 S.W.2d 953, 955 (Ky. 1951).

Here it is undisputed Sweet Hollow, LLC, by and through its authorized member, executed a promissory note in the amount of $908,977.86 and a mortgage in favor of Citizens Bank. In addition to the

mortgage, the note is also secured by guarantee agreements executed by Susan R. Finley-Tankersley and James H. Tankersley.

The execution of the note and mortgage was pursuant to an Agreed Order entered by the Court in a previous foreclosure action filed against the defendants in 2010 (Case No.09-CI-00817). In 2009 the parties agreed that in exchange for Citizens Bank refinancing the note at issue (a note executed in 2005 by Sweet Hollow, LLC) and loaning an additional $100,000.00 the defendants waived and released any and all identified and unidentified claims arising from the 2005 loan transaction.

Susan R. Finely Tankersley represented to the Court and Citizens Bank she was the authorized member of Sweet Hollow, LLC to execute the Agreed Order, the note and mortgage. Susan R. Finley Tankersley provided to the bank at the time of executing the note an operating agreement naming her as the successor managing member and a company resolution signed by the members of the company authorizing her to execute the note and mortgage.

Currently the defendants are 186 days past due. Their last payment was made on May 4, 2017 and they are currently due for May 4, 2017. Upon defendants failure to pay the plaintiff it has the right to accelerate the

note amount without notice and sell the collateral. See KRS 355.3-504 and Catron v. Citizens Union Bank, 229 S.W. 3d 54 (Ky. App. 2006).

There are no genuine issues of material fact. The defendants executed a note and mortgage and have defaulted in their repayment of the note.

9.     The defendants Sweet Hollow, LLC, Susan R. Finley-Tankersley and James Tankersley have defaulted in the repayment of the note referenced in the complaint and the plaintiff has declared the entire unpaid balance due and payable at once and in full.

10.     Note 8927 was executed by defendant Sweet Hollow, LLC and is secured by a real estate mortgage of record in Mortgage Book 948 page 502 in the Office of the Laurel County Clerk, London, Kentucky and Mortgage Book 368 Page 396 in the office of the Knox County Court Clerk, Barbourville, Kentucky.

11.     The plaintiff is entitled to have the real estate secured by its mortgage sold in by the Master Commissioner to satisfy the indebtedness of defendant Sweet Hollow, LLC owed on note 8927.

12.     The plaintiff's mortgage on the real property is a first and superior lien and has priority over all other liens.

13. The subject tracts of real property are indivisible and cannot be divided without materially impairing its value.

14. As verified by the affidavit attached to the plaintiff's motion for judgment the defendants Sweet Hollow, LLC, Susan R. Finley-Tankersley and James Tankersley have defaulted on the repayment of note 8927 not having made a payment since May 4, 2017 and the plaintiff is entitled to a summary judgment against these defendants for the outstanding balance and the proceeds from the sale of the real property should be applied to these defendants' indebtedness.

15. The defendants are indebted to plaintiff on note 8927 in the amount of EIGHT HUNDRED FORTY SIX THOUSAND THREE HUNDRED EIGHTY SEVEN DOLLARS AND 75/100 ($846,387.75) bearing interest at the rate of 5.5% per annum ($124.6239 per day) from November 6, 2017 until the date of judgment

16. The plaintiff is entitled to access to the real property for inspection and to a permanent injunction in its final judgment enjoining the defendants from dissipating the value of the real property and enjoining the defendants from removing any fixtures from the real property.

17. The plaintiff is entitled to attorney fees in the amount of $8,200.00 and costs in the amount of $734.00.

## CONCLUSION OF LAW

Based upon the above Findings of Fact, the Court concludes that the plaintiff is entitled to a summary judgment against the defendants Sweet Hollow, LLC, Susan R. Finley-Tankersley and James Tankersley in accordance with the relief requested in the complaint. The plaintiff is entitled to a default judgment against the defendant Commonwealth of Kentucky, Department of Revenue, Division of Collections in accordance with the relief requested in the complaint.

## JUDGMENT AND ORDER OF SALE

Based upon the above Findings of Fact and Conclusions of Law, the plaintiff is now and hereby granted a summary judgment against the defendants Sweet Hollow, LLC, Susan R. Finley-Tankersley and James Tankersley and a default judgment against the defendant Commonwealth of Kentucky, Department of Revenue, Division of Collections:

1. The plaintiff is granted a summary judgment against the defendants Sweet Hollow, LLC, Susan R. Finley-Tankersley and James Tankersley on note number 8927 in the amount of EIGHT HUNDRED FORTY SIX THOUSAND THREE HUNDRED EIGHTY SEVEN DOLLARS AND 75/100 ($846,387.75) bearing interest at the rate of 5.5%

per annum ($124.6239 per day) from November 6, 2017 until the date of judgment

2.      The plaintiff is awarded post judgment interest at the rate of 5.5% per annum from the date of this judgment until paid in full.

3.      The plaintiff is entitled to fees in the amount of $8,200.00 and court costs in the amount of $734.00.

4.      The plaintiff is granted an in rem default judgment against the defendant Commonwealth of Kentucky, Department of Revenue, Division of Collections and its interest in said property, if any, is now barred and forever quieted.

5.      The defendants Ben Hamilton and Jessica Hamilton are hereby dismissed from this action.

6.      The plaintiff shall have access to the real property for inspection and to a permanent injunction in its final judgment enjoining the defendants from dissipating the value of the real property and enjoining the defendants from removing any fixtures from the real property.

7.      The defendants, after the sale, or any person holding under them, are no longer entitled to possession of the real property, and the defendants or any persons holding under them are ordered to vacate the premises upon confirmation of the judicial sale.   The Laurel or Knox

County Sheriff is authorized and directed to evict any party or parties to this case occupying or claiming an interest in said property adverse to the purchaser upon proof of entry of this Judgment and the Order Confirming Sale and without further Order of this Court.

8.    It is hereby adjudged that the plaintiff's mortgage is a first and superior lien on the subject real property and has priority over all other liens.

9.    The plaintiff is entitled to have the property sold but the hearing on the proposed order of sale shall be noticed before the Court on February 9, 2018 or as soon as practicable thereafter.

10.    This is a final and appealable judgment and there is no just reason for delay.

Entered this the _25_ day of _JAN_ , 2018.


_____
JUDGE, Laurel Circuit Court

## DISTRIBUTION:

Hon. John D. Ford
P.O. Box 1328                                      ( X
Mt. Vernon, KY 40456

Susan Renee Tankerlsey
424 Sweet Hollow Road                              ( X
Corbin, KY 40701

James Tankersley
424 Sweet Hollow Road                              ( X
Corbin, KY 40701

Sweet Hollow, LLC
424 Sweet Hollow Road                              ( X
Corbin, KY 40701

Hon. Brian T. Canupp
322 Main Street                                    ( X
Paris, Kentucky 40361-2006

Hon. Wesley R. Tipton
404 Roy Kidd Avenue                                ( X
P.O. Drawer 1284
Corbin, KY 40702

Commonwealth of Kentucky
Department of Revenue                              ( X
Division of Collections
501 High Street
Frankfort, KY 40620

<u>_____</u>
Clerk's Initials and Date